UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| BERKLEY ASSURANCE COMPANY | ) |
| Plaintiff, | ) |
| vs. | ) |
| BMG SERVICE GROUP LLC dba THE BOULEVARD GRILL & BAR VENUE, | ) JURY TRIAL DEMANDED |
| BOULEVARD RE HOLDINGS LLC, | ) Case No. |
| JON E. FUHRER COMPANY, | ) |
| LUCIA HEVIEROVA, and | ) |
| EDWIN-CLAUDE, INC. | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Berkley Assurance Company (Plaintiff or Berkley), by and through counsel, and pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 states as follows for its Complaint for Declaratory Judgment:

## PARTIES

1. Plaintiff Berkley Assurance Company is a statutory insurance company which is domiciled in Iowa with its principal place of business in Arizona. It is not a citizen of Missouri for the purposes of diversity jurisdiction.

2. Defendant BMG Service Group LLC d/b/a The Boulevard Grill & Bar Venue (BMG) is a Missouri limited liability company. Upon information and belief all of the members of BMG are citizens of Missouri, making BMG a citizen of Missouri for the purposes of diversity jurisdiction.

3. Defendant Boulevard RE Holdings LLC (Boulevard RE) is a Missouri limited liability company. Upon information and belief all of the members of Boulevard RE are citizens of Missouri, making Boulevard RE a citizen of Missouri for the purposes of diversity jurisdiction.

4. Defendant Jon E. Fuhrer Company (Fuhrer) is a Missouri corporation with its principal place of business in St. Louis, Missouri. It is a citizen of Missouri for the purposes of diversity jurisdiction.

5. Defendant Lucia Hevierova (Hevierova) is a natural person and, upon information and belief, is a citizen of the State of Florida for purposes of diversity jurisdiction. Hevierova claims an interest in the real property located in Missouri which is the subject of this action.

6. Defendant EDWIN-CLAUDE, INC. (Edwin-Claude) is a Missouri Corporation with its principal place of business in St. Louis, Missouri. It is a citizen of the State of Missouri for purposes of diversity jurisdiction.

## VENUE AND JURISDICTION

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this case involves a controversy between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 1397.

## FACTS COMMON TO ALL PARTIES AND CLAIMS

### The Policy

9. Berkley issued a Commercial Property insurance policy to BMG under policy number VUMA0151020 for the policy period of July 1, 2017, to July 1, 2018, extended by

endorsement to August 4, 2018 (the Policy). A true and accurate copy of the Policy is attached hereto as *Exhibit A* and incorporated herein by reference.

10. Courtney Hoffman is the managing member and sole member of Berkley's insured, BMG.

11. Pursuant to its terms, the Policy provided insurance coverage up to a limit of $1,000,000 for real property and up to a limit of $300,000 for business personal property.

12. The Policy lists 2543 N. Grand Avenue in St. Louis, Missouri, 63106 (the Property) as a covered location.

13. The Policy contains the following pertinent provisions:

**FIRE PROTECTIVE SAFEGUARDS**

This endorsement modifies insurance provided under the following:
COMMERCIAL PROPERTY COVERAGE PART

**SCHEDULE\***

| Prem. No. | Bldg No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 2 | P-1, P-9 |
| **Describe any "P-9":** UL 300 Compliant Fire Suppression System | | |
| **Name and Address of outside Central Station Service or Fire Station that responds:** | | |

**A.** The following is added to the COMMERCIAL PROPERTY CONDITIONS:

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listen in the Schedule above.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

"**P-1**" **Automatic Sprinkler System**, including related supervisory services. Automatic Sprinkler System means:

    a.  Any automatic fire protective or extinguishing system, including connected:

        1) Sprinklers and discharge nozzles;
        2) Ducts, pipes, valves and fittings;
        3) Thanks, their component parts and supports; and
        4) Pumps and private fire protection mains.

    b.  When supplied from an automatic fire protective system:

        1) Non-automatic fire protective systems; and
        2) Hydrants, standpipes and outlets.

\* \* \*

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension, malfunction or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact;

2. Failed to maintain any protective safeguard listed in the Schedule above in complete working order;

3. Failed to activate the safeguard system;

4. Deactivated the safeguard system; or

5. Failed to pay service fees or costs as required for a private security or public or volunteer fire department to respond to any protective safeguard shown above.

*Exhibit A*.

14.    The Policy lists Fuhrer as a Mortgageholder. *Exhibit A.*

15.    Fuhrer may have a mortgage interest in the Property pursuant to a Deed of Trust and promissory note, both dated November 5, 2013. A true and accurate copy of the Deed of Trust is attached hereto as *Exhibit B* and incorporated herein by reference.

16.    With respect to Mortgageholders, the Policy provides:

  2. **Mortgageholders**

4

   \* \* \*

    b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

   \* \* \*

    d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

      1) Pays any premium due under this Coverage Part at our request if you have failed to do so;
      2) Submits a signed, sworn proof of loss within 60 days after receiVng notice from us of your failure to do so; and
      3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

    All of the terms of this Coverage Part will then apply directly to the mortgageholder.

    e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

      1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
      2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

*Exhibit A*.

17. The amount of Fuhrer's mortgage interest in the subject property, if any, is not evident from the Policy. *Exhibit A*.

18. The Policy does not list Hevierova as a mortgageholder. *Exhibit A*.

19. Hevierova may be a mortgageholder (Deed Trustee) with respect to the Property or the Policy, *Exhibit A,* pursuant to a Deed of Trust dated April 14, 2016. A true and accurate copy of the Deed of Trust is attached hereto as *Exhibit C* and incorporated by reference.

20. The Policy does not list Boulevard RE as a mortgageholder. *Exhibit A*.

5

21. BMG and Boulevard RE entered into an All Inclusive Agreement for Deed, i.e., Contract for Deed, for the Property and other property on June 23, 2017. A true and accurate copy of the contract for Deed is attached hereto as *Exhibit D* and incorporated herein by reference.

22. Boulevard RE is not a mortgageholder with respect to the Property or the Policy.

### The Additional Interest Schedule

23. Berkley possesses an Additional Interest Schedule, attached hereto as *Exhibit E* and incorporated herein by reference, which references BMG as the named insured and is dated May 16, 2017.

24. The Additional Interest Schedule lists Fuhrer as a mortgagee. *Exhibit E*.

25. The Additional Interest Schedule lists Hevierova as a loss payee. *Exhibit E*.

26. The Additional Interest Schedule lists Boulevard RE as a mortgageholder and loss payee. *Exhibit E*.

27. The Additional Interest Schedule does not mention Berkley or reference or incorporate the Policy. *Exhibit E*.

28. The Policy contains no provision for payment to be made to a loss payee. *Exhibit A*.

29. The Additional Interest Schedule is not incorporated or referenced within the Policy. *Exhibit A*.

### The Fire & Investigation

30. On June 30, 2018, a fire occurred at the Property (the Incident Fire).

31. An origin and cause investigation of the Incident Fire was conducted by Rob Helmkamp of Pyr-Tech on July 5, 2018. A true and accurate copy of Mr. Helmkamp's report is attached hereto as *Exhibit F*.

32. Mr. Helmkamp determined that the sprinkler system was not activated or in service at the time of the fire. *Exhibit F*.

33. Similarly, on July 26, 2018, Tom Rodante with Baker Engineering and Risk Consultants inspected the scene of the Fire. He determined that prior to and during the fire the sprinkler flow valve and the isolation valve were closed. He also determined that the installation was not complete of an alarm flow valve on the system, which would have sent a fire alarm signal to the alarm company.

**Claims**

34. On September 4, 2018, pursuant to the terms of the Policy, BMG submitted its Proof of Loss for alleged loss on account of the Incident Fire for the Policy's limits of $1,300,000. A true and accurate copy of the Proof of Loss is attached hereto as *Exhibit G* and incorporated by reference.

35. On September 6, 2018, Berkley denied coverage to BMG under the Policy based on BMG's failure to maintain the automatic sprinkler system as required by the Policy. A true and accurate copy of the denial letter is attached hereto as *Exhibit H* and incorporated by reference.

36. On September 13, 2018, BMG sent correspondence to Berkley informing Berkley that its decision to deny coverage need (sic) to be corrected. A true and accurate copy of this correspondence is attached hereto as *Exhibit I* and incorporated by reference.

37. On September 18, 2018, BMG sent correspondence to Berkley apologizing for the correspondence of September 13, 2018, disagreeing with Berkley's decision to deny coverage, asking Berkley to consider additional information, and informing Berkley that BMG has only a

financial obligation to Boulevard RE. A true and accurate copy of this correspondence is attached hereto as *Exhibit J* and incorporated by reference.

38. On or about September 26, 2018, Fuhrer submitted a Proof of Loss to Berkley claiming a loss as mortgage holder in the amount of $373,620 plus attorney's fees and 12% interest until paid, for losses on account of the Incident Fire. A true and accurate copy of the Fuhrer Proof of Loss is attached hereto as *Exhibit K* and incorporated by reference.

39. On September 29, 2018, BMG sent correspondence to Berkley contesting Berkley's denial and informing Berkley that the claim should not be considered denied until BMG has exhausted all avenues to change the bogus decision, contesting denial, and informing Berkley that it should not pay off the mortgage holder until a final adjudication is reached. A true and accurate copy of this correspondence is attached hereto as *Exhibit L* and incorporated by reference.

40. On October 17, 2018, Hevierova submitted a Proof of Loss to Berkley claiming a loss in an unknown amount for losses on account of the Incident Fire. A true and accurate copy of the Hevierova Proof of Loss is attached hereto as *Exhibit M* and incorporated by reference.

41. On November 1, 2018, Boulevard RE provided Berkley its Proof of Loss dated October 10, 2018, for losses allegedly sustained on account of the Incident Fire, due to its position as lender, in the amount of $1,251,005.85. A true and accurate copy of the Boulevard RE Proof of Loss is attached hereto as *Exhibit N* and incorporated by reference.

42. On July 2, 2018, BMG entered into an Engagement Letter with Edwin-Claude with respect to the Incident Fire that occurred at the Property which Letter purportedly includes a lien "against insurance proceeds and the Property that is the subject of the Service Agreement, to

whoever paid or directed . . . ." A true and accurate copy of the Engagement Letter is attached hereto as *Exhibit O* and incorporated by reference.

43. On September 15, 2018, Edwin-Claude sent correspondence to Berkley informing Berkley that Edwin-Claude's name should be included on all payments, even if made directly to the mortgageholder, and claiming a lien on any proceeds paid to or for the benefit of BMG. A true and accurate copy of this correspondence is attached hereto as *Exhibit P* and incorporated by reference.

44. On September 19, 2018, BMG terminated the services of Edwin-Claude and notified Berkley by correspondence on that date. A true and accurate copy of this correspondence is attached hereto as *Exhibit Q* and incorporated by reference.

45. On September 20, 2018, Edwin-Claude notified Berkley that its contract and liens are in full force and effect and Edwin-Claude must be included on each and every payment, including, but not limited to, payments to the mortgageholder. A true and accurate copy of this correspondence is attached hereto as *Exhibit R* and incorporated by reference.

## COUNT I – DECLARATORY JUDGMENT

46. Plaintiff hereby incorporates by reference as though fully set forth herein the above allegations contained in paragraphs 1 through 47.

47. Due to BMG's failure to comply with the Policy's requirement to maintain the sprinkler system and BMG's requests as set forth in paragraphs 38, 39, 41, and 46, above, an actual controversy exists between Berkley and BMG concerning Berkley's duties and obligations under the Policy.

48. BMG failed to meet one or more of the conditions for coverage as required by the Policy's FIRE AND PROTECTIVE SAFEGUARDS provisions for a P-1 Protective Safeguard as set forth in paragraph 13, above.

49. The Policy does not provide coverage for BMG for any alleged losses sustained by BMG and caused by the Incident Fire.

50. Based upon the claims submitted by Fuhrer, Hevierova, and Boulevard RE, an actual controversy exists with respect to what payments, if any, Berkley is obligated to make to them under the Policy.

51. Based upon Edwin-Claude's claimed lien and threat that a payment by Berkley to anyone which does not include Edwin-Claude would be tortious interference with its contact, a controversy exists with respect to whether any payment made by Berkley should include Edwin-Claude.

52. These controversies are now ripe for adjudication and an adequate remedy at law does not exist as Berkley is uncertain of the extent, if any, to which it is required to compensate Defendants for claimed losses from the Incident Fire under the Policy.

53. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth the rights, obligations and liabilities that exist between the parties in connection with the Policy.

WHEREFORE Berkley respectfully requests this Court enter judgment as follows:

A. Declaring that Berkley does not have any coverage or a duty to pay BMG for losses resulting from the Incident Fire;

B. Declaring the payment Berkley should make to Fuhrer as an alleged mortgageholder under the Policy for covered losses sustained by Fuhrer on account of the Incident Fire;

C. Declaring that Berkley does not have any duty to pay Hevierova for losses resulting from the Incident Fire or, in the alternative, declaring the payment Berkley should make to Hevierova under the Policy for covered losses sustained by Hevierova on account of the Incident Fire;

D. Declaring that there is no coverage under the Policy for Boulevard RE and Berkley has no obligation or duty under the Policy to pay Boulevard RE;

E. Declaring that Berkley is not obligated to include Edwin-Claude on any payments for losses resulting from the Incident Fire or, in the alternative, identifying which payments should include Edwin-Claude;

F. Such other and further relief as the Court deems just and proper under the circumstances.

## JURY TRIAL DEMAND

Berkley respectfully requests a jury trial on all issues triable to a jury.

RESPECTFULLY SUBMITTED,

ARMSTRONG TEASDALE LLP


By:  /s/ *Lynn W. Hursh*
Lynn W. Hursh                              #38653
Lauren H. Navarro                       #68111
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
816.221.3420
816.221.0786 (facsimile)
lhursh@armstrongteasdale.com
lnavarro@armstrongteasdale.com

*Attorneys for Petitioner Berkley Assurance Company*